(86 N. W. Rep. 742.)

———————

FIRST NATIONAL BANK OF ST. THOMAS *vs.* WILLIAM FLATH, *et al.*

Opinion filed May 29, 1901.

**Mortgage—Payment.**

> The evidence in the case reviewed and considered, and *held* that the mortgage in suit was not paid as a matter of fact or by operation of law.

Appeal from District Court, Pembina County; *Sauter,* J.

Action by the First National Bank of St. Thomas against William Flath and others. Judgment for plaintiff, and defendants appeal.

Affirmed.

*Templeton & Rex,* for appellants.

*Bosard & Bosard,* for respondent.

MORGAN, J. This is an action for the foreclosure of a real estate mortgage. It was given by William Flath and Jemima Flath to one William Bradley on the 6th day of July, 1893, to secure the payment of a promissory note given on that day for the sum of $1,250, due January 1, 1894. This mortgage was duly assigned to T. A. Miller on December 24, 1897, and by said Miller assigned to the plaintiff on April 12, 1899. Payments are alleged to have been made. on the note as follows: All interest due on said note up to January 15, 1900, and the sum of $41.53 paid on the principal on January 15, 1900. These are the only payments credited on the note so far as the allegations of the complaint are concerned. The defendants interposed an answer alleging (1) that such note and mortgage are fully paid; (2) that it was not the intention of T. A. Miller to assign to the plaintiff any interest in said mortgage and that the plaintiff never took or received such assignment with the intention of acquiring any interest in such mortgage, but took the same for the purpose of cheating and defrauding the defendants. The trial court found in favor of the plaintiff. The defendants appeal, demanding a trial *de novo.* The defendants Anton Flath and John Birkholz are made parties as subsequent purchasers and incumbrancers of said real estate. The answer denies that their interests in such real estate are subsequent to that of the plaintiff. Other material facts appear from the evidence, substantially as follows: That there was a prior mortgage on the land embraced in the mortgage in suit in favor of the Middlesex Banking Company for $2,000, which was, in the fall of 1897, like the mortgage in suit, past due. There was then due thereon about $2,259. The mortgage in suit was owned by T. A. Miller at this date. About this time—that is, in the fall of 1897—William Flath and the firm of A. L. & T. A. Miller talked over among themselves the making of a loan on this land, through the Millers as agents, for a sum sufficient to take up the incumbrances on this land, —that is, these two mortgages,—and the Millers were then authorized, to negotiate such a loan, which they did with the Fargo Loan Agency. The Millers learned soon after this time, through Mr. Flath himself, that he had made arrangements for making the loan through Mr. Leistikow, and that he would not take the loan for which the Millers had negotiated with the Fargo Loan Agency. Upon hearing that Flath would not take the loan thus arranged for by the Millers, T. A. Miller immediately commenced a foreclosure of the mortgage in suit, and notice of such foreclosure was published in a newspaper. For some reason, probably because the loan he had arranged for through Mr. Leistikow was not large enough to take up the two mortgages on the land, Mr. Flath abandoned the Leistikow loan, and went back to the Millers, and the arrangement originally made between them as to making a loan through the Fargo agency for $3,500 was put into operation and actually consummated, and the

foreclosure proceedings were abandoned. The date of this loan was January 31, 1898. The $3,500, for which a note and mortgage were executed by Flath and wife to the Fargo agency, came into the hands of the Millers some time in February, 1898, the precise date not clearly appearing in the evidence. Upon receipt of this sum the Millers paid to the Middlesex Banking Company $2,259, the full amount of its mortgage. At this time there was due on the mortgage held by T. A. Miller the sum of $1,327.95, so that there was not enough left of the $3,500 loan to pay the Miller mortgage within $86.95. Some time about March 1, 1898, the Millers rendered a statement to Flath respecting the loan of $3,500, and the disposition of that money. This statement is known as "Exhibit 5," and is as follows:

### EXHIBIT 5.

William Flath Loan Account A. L. & T. A. Miller.

| | | |
|---|---:|---:|
| Cash to Hager, mortgage notice...................... | $    3.65 | |
| Amt. due Bradley Mtg. on 1-31-98, date new loan...... | 1,327.95 | |
| Cash paid old loan.................................. | 2,259.00 | |
| Cash paid to J. A. Dunn............................. | 49.75 | |
| To cash from new loan............................... | | $3,500.00 |
| Balance due A. L. & T. A. Miller.................... | | 140.35 |
| | $3,640.35 | $3,640.35 |

This statement pertained exclusively to the loan of $3,500. The sum therein stated as due the Millers ($140.35) was made up of the sum of $3.65 paid by them on the foreclosure that had been commenced and withdrawn, $49.75 which they had paid on the Leistikow mortgage at Flath's request, and the $86.95 heretofore mentioned. This statement was taken to, and shown to, Mr. Flath by A. L. Miller early in March. There is a dispute between Miller and Flath as to what was said when this statement was presented. Miller says that he then told Flath that this was to show the state of the account, and was not presented as a settlement, but to show what the deficiency was, and to show "how the matter would stand if settlement was made." Flath denies that Miller so stated, and claims that he requested Miller to apply what money they had in their hands as a part payment upon the mortgage in suit. As to whether Flath directed that this money be applied on the Miller note there is a conflict. Flath said he did, and Miller denies that he did. If such direction was given by Flath, it was before the accounts were turned over in June. Up to June 24th, when the mortgage in suit was made an inferior lien to the $3,500 mortgage, the Millers could not be expected to apply only a part of what was due on the T. A. Miller mortgage, and Miller was not compelled to release his mortgage until it was wholly paid. If the Millers had allowed a part payment to be made on this mortgage, to the extent of the balance left of the $3,500, the Fargo Loan Agency would not have had a first mortgage, which it was entitled to. If Miller had satisfied his mortgage before it was fully paid, he would have had no security for $140.35 due him, and it is not reasonable to suppose that the Mil-

lers would have consented to any arrangement that would not give the Fargo Loan Agency a first mortgage, and at the same time not give Miller his money in full or security for it. It is claimed by appellants that Exhibit 5 shows upon its face that the full amount due was actually applied on the note and mortgage in suit. We do not so understand it, when considered by itself, independently or in connection with the evidence. It purports to show on its face the amount due on the mortgage, and what disposition had been made of the money on the $3,500 loan, so far as disposed of. If it was intended as a statement of a settlement, the sum stated to be due would naturally have been expressed as paid to T. A. Miller, and not as a sum due on that mortgage. We think that Exhibit 5 shows upon its face that it was drawn up and shown to Flath as a statement of the condition of the account only. The language of it is corroborative of Miller's evidence concerning it. From the time when Exhibit 5 was presented, Flath and the Millers had no negotiations nor conversations concerning the note, the mortgage, or the deficiency until about June 6th following. On this day Flath turned over to the Millers some book accounts to "pay some accounts that I had been owing some wholesale houses down below, together with this old debt of theirs. I mean the one hundred forty dollars and thirty-five cents." Flath thus states the purpose for which these book accounts were put into the hands of the Millers. The Millers gave him a receipt for such book accounts on June 6th, reading as follows, and known as "Exhibit F.": "Received of Wm. Flath his book accounts to be held as collateral to the following claims, and, when fully paid, the balance of the book accounts are to be returned to the said Flath, viz." Here follows a list of the accounts thus secured to be paid, amounting to $1,231.50. These embrace an account in favor of the Millers of $285, which sum includes the deficiency item of $140.35, hitherto described. Matters now ran on until June 24th without anything being done between these parties concerning either the mortgage, the note, or the accounts. On June 24th, T. A. Miller executed and acknowledged an instrument to the Fargo Loan Agency, wherein he waived the lien of his mortgage so far as the $3,500 mortgage was concerned, and therein stipulated that the $3,500 mortgage of said Fargo Loan Agency should be a first lien on the lands mortgaged, and that his mortgage should be subsequent thereto. In this instrument there is the following recital: "Whereas, the said T. A. Miller, for good and valid reasons, does not now desire to release the mortgage made by said Flath and wife to Bradley, and by him duly assigned to said Miller, as to said Flath and wife, but does desire to release the same as to said Fargo Loan Agency," etc. In testifying concerning this instrument, A. L. Miller says: "It was six months after the loan was started, and still it was incomplete, because Mr. Flath could not get the money to straighten up the balance. That was the reason the waiver was made to hold the money on the Bradley mortgage, and still to

complete the loan. We did not recite that we held the security for any indebtedness. We were dealing with the Fargo Loan Agency, at his request, and it was not their business what we were keeping it for." By requesting this instrument to be executed Mr. Flath recognized the mortgage as still unpaid, although he testifies that it was paid some months before this date.

The accounts turned over by Flath on June 6th amounted to about $2,300. On June 24th, the date of making the so-called "waiver," there had been collected on these accounts by the Millers a very few dollars only,—not over $15, as appears from the statement rendered. Up to the time of trial $313.39 had been collected on these accounts, and this sum had been paid out by the Millers according to directions given by Flath. This sum was paid out by the Millers upon accounts in their hands as collections against Flath, and was paid out under his directions. None of this sum was applied on the Miller mortgage, nor did Flath direct that any of this sum be applied on the Miller mortgage in particular.

The next transaction between these parties respecting this mortgage was on September 15, 1898. At this time the following writing was signed by Mr. Flath, on the same sheet of paper that Exhibit F was written on: "It is hereby understood and agreed by and between Wm. Flath and A. L. & T. A. Miller that a certain note for $1,250, dated July 6th, 1893, and due January 1st, 1894, with 12 per cent. interest after maturity, payable to the order of William Bradley as payee, and signed, executed, and delivered by William Flath and Jemima Flath, his wife, as makers (with payments on the said note as follows: Sept. 26, 1894, $253.55; Nov. 28, 1895, $50; Dec. 20, 1895, $100; Feby. 26, 1896, $75), which said note was secured by real estate mortgage recorded in the office of the register of deeds of Pembina county, North Dakota, July 11th, 1893, at 8 o'clock a. m., in Book 54, page 208, and which said note and mortgage were by the said William Bradley, for a valuable consideration, duly assigned to T. A. Miller, one of the members of the firm of A. L. & T. A. Miller, and that said note and mortgage shall be held as collateral security in addition to the other security held as collateral to secure the payment of the eight claims listed above on this sheet. St. Thomas, N. D., Sept. 15th, 1898. William Flath." At the date of making the contract of September 15th the Millers had not collected but a trifling part of the book accounts, and not enough to make up the amount that was required to fully pay the Miller mortgage, as computed in March previous. Mr. Miller testifies as to the signing of the stipulation (Exhibit F) as follows: "I told him, if the matter was going to run along in the condition it was any longer, that we must have other security, and have the arrangement in black and white. I don't know as I used these words, but I gave him to understand that it was our intention; that we would not carry it any longer in the condition that it was in. I showed him the Bradley mortgage and the indorsements on the note, and told him what we

wanted, and I drew up that stipulation, and he signed it." Between the date of making this contract (Exhibit F) and June, Miller had paid out, at Flath's request, considerable money upon accounts owed by Flath and statements rendered Flath of such payments. In these statements of the condition of the accounts between the Millers and Flath, which statements were rendered up to November, 1898, the item of $140.35 was included as due from Flath to the Millers. When these statements were rendered collections were being made, and new payments were made by the Millers at Flath's request. The result was that the state of the accounts between them was constantly changing, rendering such statements necessary to give Flath a correct understanding as to how matters stood. We do not therefore, think that because the Millers stated the $140.35 item in these accounts as so much due them can be taken to show that the mortgage was fully paid or that this item was due as an account simply. Flath was in embarrassed circumstances financially, and was being pressed for payment of money due from him. It was natural that he should consent to this arrangement of September 15th as expressed in Exhibit F, in order to satisfy the Millers, who had been previously advancing money for him without written authority. It would not be natural nor usual that Miller, with full knowledge of Flath's embarrassed financial condition, should pay out money on behalf of Flath, and release his security, and accept Flath's personal obligation for his reimbursement. Looking at all these transactions with a view of determining what two business men would naturally do under such circumstances, we are forced to conclude that it was not the intention of these parties to apply the money received from the Fargo Loan Agency on the note in suit, and that they intended a contrary disposition of such money. The agreement of September 15th was a positive acknowledgment on the part of Flath that the note and mortgage were still unpaid. His statement now that this note was paid long before this is directly contradicted by this writing and by his conduct generally. This is in corroboration of Miller's testimony, and the facts considered altogether impress us with the belief that this note and mortgage are still unpaid, except as to payments indorsed on the note. As bearing upon the question as to whether Mr. Flath thought that the mortgage in suit was paid or not, it is an undisputed fact in the case that he never mentioned or demanded a release of the mortgage, nor a surrender of the note. If he considered this debt paid, it would seem that during some of these numerous transactions he would have stated that this note was paid. On the contrary, he did what was inconsistent with such an idea We are satisfied that he directed or consented to a different disposition to be made of the money that was in the hands of the Millers. That he could do so could not be reasonably questioned, and is not questioned. That it was in his interest to do so appears from the evidence, and strengthens the conclusion that he intended that this money should not be applied on the mortgage. On consideration of

all the evidence, we fail to find that Flath has succeeded in showing that T. A. Miller ever received the money due on his mortgage, and it is not shown that the mortgage was paid as a matter of fact or by operation of law. The burden was on him to show that the note was paid. He has not sustained it in any way, but has failed to do so.

Our conclusion that the note and mortgage in suit were not paid renders it unnecessary for us to determine whether Exhibit F extended or revived the note and mortgage, if the evidence had shown that they were paid. The defendants Anton Flath and John Birkholz, having acquired their interests in the land involved while the mortgage was unsatisfied and appeared of record, had notice of its existence, and their rights are subject thereto. The judgment is affirmed. All concur.